# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OPTIMIZE COURIER, LLC,

    Plaintiff,

v.

NICHOL ALLY and EASYFLYERS
USA LOGISTICS INCORPORATED,

    Defendants.

NO. 3:19-CV-1156

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is a Motion to Dismiss (Doc. 13) filed by Defendants Nichol Ally ("Ally") and Easyflyers USA Logistics Incorporated ("Easyflyers") (collectively, where appropriate, "Defendants"). Defendants seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). Alternatively, Defendants request that the case be transferred to the United States District Court for the Eastern District of New York. Because the balance of relevant private and public interest factors weigh strongly in favor of transfer, the motion will be granted in part and the case will be transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

## I. Background

Optimize Courier, LLC ("Optimize") is engaged in the business of "worldwide coordination and transportation of time critical expedited and emergency logistics." (Compl., ¶ 7).[1] Ally was employed as Optimize's Director of Operations from October 2016 until he resigned in February 2019. (*See id.* at ¶ 3). In that role, Ally had complete control of operations, the oversight of shipments, and was the primary

---

[1] Optimize was first organized and formed under the law of Pennsylvania on or about March 17, 2010. (*See* Doc. 1, Ex. "B"). Optimize converted into a Florida limited liability company on or about March 8, 2019. (*See id.*).

contact for Optimize's top accounts. (*See id*. at ¶ 16).

Ally and Artie Kingren ("Kingren"), Optimize's Manager, first met to discuss the Director of Operations position on August 30, 2016 in Stroudsburg, Monroe County, Pennsylvania. (*See* Kingren Aff., ¶¶ 1, 6).[2] On or about October 1, 2016, Kingren electronically sent Ally a copy of an employment agreement (the "Agreement"). (*See id*. at ¶ 5; *see also* Compl., Ex. "A"). While Kingren states that the Agreement was electronically returned in October 2016 to Optimize's office in Monroe County, (*see* Kingren Aff., ¶ 7), Ally indicates, to the best of his recollection, that the Agreement was signed in February 2018 at Optimize's New York office while Kingren was present. (*See* Second Ally Aff., ¶ 13). The Agreement attached to the Complaint indicates that Ally's employment commenced on October 1, 2016, but it is signed and dated by Ally and Kingren in February 2018. (*See* Compl., Ex. "A"). The Agreement provides that Ally will "be working from the Pennsylvania office, with the ability to work from home from time to time with Presidents approval. This location may change in the future." (*Id*.). According to Ally, however, Kingren advised him before his employment commenced that he would work in New York - either out of Ally's home or at the Optimize office near JFK airport. (*See* Second Ally Aff., ¶ 7).

While employed by Optimize, Ally emphasizes that he never worked in Pennsylvania. (*See* First Ally Aff., ¶ 10). Instead, he worked almost exclusively from the Optimize office in Jamaica, New York. (*See id*. at ¶ 17). To that effect, Ally notes that he was never at Optimize's office in Pennsylvania. (*See id*. at ¶ 18). He also swears that the operations department he oversaw was located in Honduras, that none of the clients he served were based in Pennsylvania, and he never solicited any clients

---

[2] "In deciding a § 1404(a) motion, a court is not limited to the pleadings, and may consider affidavits and other evidence." *Roller v. Red Payments, L.L.C.*, No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. Aug. 12, 2019) (citations omitted); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

2

or prospective clients in Pennsylvania. (*See id*. at ¶¶ 15-16, 19).

Kingren, in response, declares that Ally at all times reported directly to him "at the Pennsylvania offices of Optimize," and that Ally "communicated with the Pennsylvania offices of Optimize [by video skype] over 2,000 times during the course of his employment." (Kingren Aff., ¶¶ 8-9). Ally sent "thousands of electronic communications to Pennsylvania" during the course of his Optimize employment according to Kingren. (*Id*. at ¶ 10). Ally also received all of his compensation during his employment from funds drawn on a bank in Monroe County, Pennsylvania, and the proceeds of all transactions generated by Ally were deposited into accounts at that bank as well. (*See id*. at ¶¶ 11-13).

Ally replies that during his Optimize employment he sent emails to a distribution list containing dozens of recipients, most of which were located outside of Pennsylvania. (*See* Second Ally Aff., ¶¶ 2-3). The operations department he oversaw that received those emails was located in Honduras. (*See id*. at ¶ 4). Kingren also received the same emails. (*See id*. at ¶ 5). Ally asserts that during his employment with Optimize, Kingren spent the majority of his time in Florida, and when he worked in Pennsylvania, he worked from his home office. (*See id*. at ¶¶ 6, 8). During his employment, Ally states that two administrative employees worked for Optimize in Pennsylvania, but both worked out of their personal homes and not a formal office. (*See id*. at ¶ 9). Optimize, says Ally, did not have an office in Pennsylvania during his employment besides those two employees' homes. (*See id*. at ¶ 10). And, Optimize utilized GoDaddy computer servers that were not located in Pennsylvania. (*See id*. at ¶ 11). Finally, Ally avers that the document identified in the Complaint that he allegedly misappropriated, the December 2018 Gross Margin Report, was created by an employee based in Phoenix, Arizona. (*See id*. at ¶ 12).

Optimize alleges in the Complaint that prior to Ally's resignation from employment, he formed Easyflyers, now a competitor of Optimize, with the assistance of Easy Flyers s.r.o., a customer and European service partner of Optimize. (*See*

3

Compl., ¶¶ 8-10, 28). Easyflyers is a New York corporation with a principal place of business in New York. (*See* First Ally Aff., ¶ 4). Ally is the President of Easyflyers, and its address is the home address of an Optimize vendor that has a non-solicitation agreement with Optimize. (*See* Compl., ¶¶ 5-6). While he was still working for Optimize, Ally solicited Optimize Senior Account Manager John Nelson to become Easyflyers Key Accounts Director. (*See id*. at ¶¶ 32-33). Ally was aware that Nelson had an employment contract with Optimize. (*See id*. at ¶ 34). Ally is also claimed to have taken with him a Gross Margin Report containing confidential information, including sales, costs, and margins. (*See id*. at ¶ 29). Despite demand, Ally has refused to return this and other documents to Optimize. (*See id*. at ¶ 30). Additionally, he is alleged to have interfered with Optimize's business and solicited customers and prospective customers, all purportedly in violation of the Agreement. (*See id*. at ¶ 35).

Based on the foregoing, Optimize commenced litigation against Ally and Easyflyers by way of a ten-Count Complaint filed in the Court of Common Pleas of Monroe County, Pennsylvania on or about June 17, 2019. (*See* Compl., *generally*). The same day, Optimize filed a petition for preliminary injunction in state court. (*See* Doc. 1, Ex. "A"). The state court directed Defendants to respond to the petition by July 9, 2018, and also scheduled a preliminary injunction hearing for July 19, 2019. (*See id*.).

On July 8, 2019, Defendants removed the action to this Court based on diversity of citizenship pursuant to 28 U.S.C. § 1332. (*See* Doc. 1, *generally*). Ten days later, Defendants filed the instant motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. (*See* Doc. 13, *generally*).[3] Optimize filed its brief in opposition to the motion to dismiss on August 1, 2019. (*See* Doc. 16,

---

3    On July 22, 2019, Optimize withdrew its request for a preliminary injunction. (*See* Doc. 14, *generally*).

*generally*). Defendants replied to Optimize's opposition on August 15, 2019. (*See* Doc. 17, *generally*).

After review of the parties' submissions, I directed Optimize to submit a brief addressing "why the public and private interests do not support a transfer of this action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a)." (Doc. 18, ¶ 1). Optimize timely complied with that Order and submitted its brief on September 5, 2019. (*See* Doc. 19, *generally*). Defendants responded to Optimize's supplemental brief on September 12, 2019. (*See* Doc. 20, *generally*). Defendants' motion has thus been fully briefed, so it is ripe for disposition.

## II. Discussion

Defendants, as stated, seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). Alternatively, they request that the action be transferred to the Eastern District of New York under 28 U.S.C. § 1404(a). Optimize opposes a § 1404(a) transfer.

Section §1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). This section "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). Thus, I first consider whether venue is proper in this Court and the proposed transferee court, *i.e.*, the Eastern District of New York.

Both of these prerequisites are satisfied. Ally worked almost exclusively for Optimize from New York, and Easyflyers is a New York corporation located there and Ally is a citizen of New York. Furthermore, Ally resides in the Eastern District of New York. This litigation could, therefore, have been brought in that District pursuant to 28 U.S.C. § 1391(b), and Optimize does not argue to the contrary.

Second, venue is proper in this Court. Specifically, where, as here, an action

5

is removed from state court, "venue is governed by § 1441(a), which 'expressly provides that the proper venue of a removed action is the district court of the United States for the district and division embracing the place where such action is pending." *Eastern Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, No. 14-717, 2015 WL 679220, at *1 (M.D. Pa. Feb. 17, 2015) (quoting *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666, 73 S. Ct. 900, 902, 97 L. Ed. 1331 (1953)); *see also Hollis v. Florida State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) ("In removed actions the general venue provision, 28 U.S.C. § 1391, does not apply. Instead, § 1441(a), by requiring removal to the district court for the district in which the state action is pending, properly fixes the federal venue in that district. Thus, once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds."). Because Optimize commenced this action in Monroe County - which is located in this judicial district - venue is proper in this District pursuant to § 1441(a). The threshold prerequisites are therefore met for consideration of a § 1404(a) transfer. *See Jumara*, 55 F.3d at 879 (where venue is proper in both the transferor and potential transferee court, the transferor court should apply "the appropriate balancing test under 28 U.S.C. § 1404(a) to determine whether the case should proceed" in this Court or be transferred).[4]

In evaluating whether to transfer an action pursuant to § 1404(a), courts have "broad discretion to determine, on an individualized, case-by-case basis, whether

---

[4] I consider a § 1404(a) transfer prior to determining whether personal jurisdiction exists over Defendants here. "Where personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction [here], it is prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to [this Court] irrelevant." *Enigma Software Group, USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2017) (quotation and citation omitted); *accord Levin, Fishbein, Sedran & Berman v. Jameson*, No. 09-3936, 2009 WL 4857434, at *4 n.4 (E.D. Pa. Dec. 14, 2009) ("Regardless of whether this Court can properly exercise personal jurisdiction over Defendants, the authority to transfer a case remains under section 1404(a).").

6

convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)). "The burden of establishing the need for transfer . . . rests with the movant," and "the plaintiff's choice of venue should not be disturbed lightly." *Id.* at 879 (quotation and citation omitted). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quotation and citation omitted). Restated, "a transfer is not to be liberally granted." *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001) (citing *Shutte*, 431 F.2d at 25).

In considering whether to transfer an action pursuant to § 1404(a), courts are not limited to consideration of the three factors enumerated in the statute. *See Jumara*, 55 F.3d at 879. Rather, courts in this Circuit are instructed to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* (citation omitted). Both public and private interest factors are considered in evaluating a transfer under § 1404(a). Private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. *Id.* Relevant public interest considerations include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id.* at 879-80. Again, unless these factors "strongly favor" the movant's request, "the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

**A.     Private Interest Factors**.

The first *Jumara* private interest factor is Optimize's choice of forum. *See Jumara*, 55 F.3d at 879. As noted, a plaintiff's choice of forum should not be disturbed lightly. *See Shutte*, 431 F.2d at 25. However, "'a plaintiff's choice of forum is given less deference where the plaintiff chooses a forum outside of its state of residence.'" *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 564 (M.D. Pa. 2015) (quoting *Advanced Fluid Sys., Inc. v. Huber*, No. 13-3087, 2014 WL 1808652, at *17 (M.D.Pa. May 7, 2014)). A plaintiff's choice of forum is also entitled to "'less deference when none of the conduct complained of occurred in plaintiff's selected forum.'" *Id*. (quoting *Lomanno v. Black*, 285 F. Supp. 2d 637, 644 (E.D. Pa. 2003)).

Here, while Optimize was a Pennsylvania limited liability company during Ally's employment, there is no dispute that it converted into a Florida limited liability company in March 2019, *i.e.*, three months prior to commencing this action in state court.[5] Kingren - an Optimize member - appears to be a Florida citizen as well. (Second Ally Aff., ¶ 6). Moreover, while Optimize has presented evidence that Ally directed communications to Pennsylvania, there is nothing showing that the conduct complained off, *i.e.*, solicitation of clients and/or breaches of the Agreement, occurred in this District. In that regard, it is uncontested that Ally never worked in Pennsylvania, instead working almost exclusively from New York. Besides that it was formerly a Pennsylvania limited liability company, Optimize's present connection to this District is based largely around the fact that its "attorneys' office is here. In the absence of any meaningful connection to this district, [Plaintiff's] choice of forum is not given the usual deference accorded a plaintiff's choice." *Bouldin v. Drudge*, No.

---

[5]  The citizenship of a limited liability company for purposes of diversity jurisdiction is "determined by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010); *see also VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282 (3d Cir. 2014) (a limited liability company "is a citizen of any state in which its members are citizens.").

8

17-89, 2017 WL 590266, at *2 (E.D. Pa. Feb. 14, 2017); *see also Stanley v. Columbia Sussex Mgmt., LLC*, No. 18-1989, 2018 WL 2994642, at *1 (E.D. Pa. June 14, 2018) ("venue is properly focused on the parties, not their lawyers"); *Mullen v. Norfolk S. Ry. Co.*, No. 13-6348, 2014 WL 1370119, at *9 (E.D. Pa. Apr. 8, 2014) ("The only connection in this district is the offices of Plaintiff's attorney. That is not sufficient."). Such is the case here, so less deference is given to Optimize's choice of forum.

The second *Jumara* private interest factor is Defendants' preferred forum. *See Jumara*, 55 F.3d at 879. Transfer should not be granted on the grounds of a defendant's forum preference where it would "merely shift the inconvenience from the defendant to the plaintiff." *Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib.*, No. 07-4037, 2008 WL 269487, at *3 (E.D.Pa. Jan.31, 2008) (quoting *Aquarium Pharma., Inc. v. Indus. Pressing & Packaging, Inc.*, 358 F.Supp. 441, 446 (E.D. Pa.1973)). Here, it is evident that Defendants' forum preference is not based on a desire to inconvenience Optimize. Instead, New York is where Ally resides, where Easyflyers operates, where Ally was employed for Optimize, and where Optimize maintains an office. This factor thus weighs in favor of transfer.

The next *Jumara* private interest factor is the place where the claim arose. *See Jumara*, 55 F.3d at 879. In this case, Ally is alleged to have violated the Agreement by, *inter alia*, forming Easyflyers while he was still employed by Optimize, soliciting at least one Optimize employee to work for Easyflyers during his Optimize employment, misappropriating confidential Optimize documents, and soliciting Optimize clients after resigning. Noticeably, though, there is no evidence indicating that such conduct occurred in Pennsylvania. Instead, it is unchallenged that Ally worked nearly exclusively from New York, reflecting that Optimize's claim related to this purportedly unlawful activity likely took place in New York. The third *Jumara* private interest factor weighs in favor of transfer. *See, e.g., Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 461 (E.D. Pa. 2013).

The next *Jumara* private interest factor, the convenience of the parties, also

weighs in favor of transfer. The Eastern District of New York is clearly more convenient for Defendants, as they are both New York residents. Moreover, given that Optimize is a Florida limited liability company and its member(s) appearing to reside in Florida, this forum is no less convenient for Optimize than the Eastern District of New York. In other words, Optimize will have to travel regardless of whether this action proceeds here or in New York.[6] So this factor also weighs in favor of transfer.

The final two private interest factors - witness convenience and location of books and records - are neutral. These facts are to be considered only to the extent that they would be "unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Nothing in the record indicates that books, records, or witnesses would be available in this District but not the Eastern District of New York. These factors do not impact the § 1404(a) analysis in the matter *sub judice*.

**B.    Public Interest Factors.**

As to the *Jumara* public interest factors, the parties agree that any judgment will be equally enforceable in this Court or the proposed transferee court. *See Jumara*, 55 F.3d at 789. Accordingly, the first *Jumara* public interest factor is neutral.

Second, the public interest inquiry also involves "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. This

---

[6]    Insofar as Optimize suggests that the Middle District of Pennsylvania is a more convenient forum based on the location of its counsel, that factor is not to be considered in conducting the instant analysis. *See Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("convenience of counsel is not a factor to be considered" under § 1404). With respect to Optimize's argument that it will incur significantly greater attorney's fees if this case proceeds in New York, the record indicates that its counsel is admitted to practice in all federal district courts in New York. Assuming attorney's fees are relevant to the § 1404(a) analysis, *see*, *e.g.*, *Shields v. Am. Propane, Inc.*, No. 15-754, 2015 WL 5436772, at *5 (E.D. Cal. Sept. 15, 2015) ("attorneys' fees and costs are relevant to the question of litigation costs because they are borne by the parties"), it has little impact here given the status of Optimize's counsel as a licensed attorney admitted in the proposed transferee court.

factor weighs in favor of transfer because trying the action in the Eastern District of New York where the cause of action arose provides a more practical location to resolve this dispute. Further, "[w]here transfer would aid the movant and not disadvantage the opponent, transfer is appropriate." *Lai Chen v. ENN Solar Energy Co., Ltd.*, No. 13-6579, 2014 WL 6609099, at *4 (D.N.J. Nov. 20, 2014).

The third *Jumara* public interest factor is the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Optimize insists that " it is common enough knowledge that the courts in New York City are far more congested than here in Wilkes-Barre." (Doc. 19, 6). Accepting that as true, this factor, at best, tilts slightly against transfer. *Cf. High River Ltd. Partnership v. Mylan Laboratories, Inc.*, 353 F. Supp. 2d 487, 499 (M.D. Pa. Jan. 27, 2005) ("Given that the Southern District of New York is clearly more convenient for the parties and witnesses in this case, the fact that court congestion is less in the Middle District of Pennsylvania is not enough alone to continue with the action in this district.")

The public interest inquiry also considers the local interest in the controversy and the public policies of the fora. *See Jumara*, 55 F.3d at 879. While the Agreement calls for application of Pennsylvania law, this case implicates a New York citizen, a company organized under New York law that is based in New York, and wrongdoing alleged to have been done by Optimize's former employee while he was still working for Optimize in New York. Moreover, as explained before, Pennsylvania has little connection to this action - and even more so now in light of Optimize's conversion to a Florida business entity with its member(s) residing in Florida. These factors lean in favor of transfer.

The sixth and final *Jumara* public interest factor is the trial judge's familiarity with the applicable state law in diversity cases. It is reasonable to believe that I would be more familiar with Pennsylvania law that appears to govern Optimize's contractual claims. But, whether Pennsylvania law governs Optimize's other claims - and what state law applies should it not - present different questions that are not properly suited

for determination at this point. Accordingly, this factor weighs only slightly against transfer.

**C.    Balancing the *Jumara* Factors.**

Upon consideration of the *Jumara* factors, this action will be transferred to the Eastern District of New York. Here, many considerations weigh in favor of transfer. Most importantly, the record indicates that Optimize was not a Pennsylvania resident at the time of the filing of this litigation, Defendants are New York citizens, Ally never worked for Optimize in Pennsylvania, he worked for Optimize almost exclusively from New York, and the causes of action arose in New York. Moreover, the Eastern District of New York is a more convenient forum for Defendants and is no less inconvenient for Optimize. There is little connection between the litigation at issue and this District besides that Optimize's counsel has his office here, Ally came to this District initially to discuss his potential employment with Optimize, and the Agreement indicates it is governed by Pennsylvania law. But, these factors are significantly outweighed by those listed above that support a transfer of this case to the Eastern District of New York. As such, because the private and public interest factors weigh heavily in favor of transfer, Defendants have satisfied their burden of demonstrating transfer is warranted under 28 U.S.C. § 1404(a).

### III. Conclusion

For the above stated reasons, Defendants' motion will be granted insofar as it requests a transfer. The action will be transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

An appropriate order follows.

September 18, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge